**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Bulldog West Equipment, | ) | No. CV-06-2183-PHX-JAT |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| Mapcon, Inc, et al., | ) ) ) | |
| Defendants. | ) ) | |
| | ) | |

Pending before the Court is Defendants' Motion to Dismiss the Complaint for Lack of Personal Jurisdiction (Doc. # 11) pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  Plaintiff filed a Response to Defendants' Motion (Doc. # 13).  Defendants filed a Reply to Plaintiff's Response (Doc. #14).  The Court now rules on the Motion.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

The facts in this record are contained in affidavits and exhibits submitted by the parties which are in some respects conflicting.  The Court has not made findings of fact in this Order.  The Court's recitation of the facts will identify those that are apparently undisputed and those that are in conflict.

Robert W. Thomas is the president of Plaintiff Bulldog West, Inc. (Plaintiff), an Arizona corporation with its principal place of business in Arizona.  Defendants MAPCON, Inc. (MAPCON) and Corridor Rental and Sales, Inc. (Corridor) are Maryland corporations with principle places of business in Maryland.  Defendant Cullen Phillips is a Maryland

1  resident, president and sole owner of Corridor, and vice-president of MAPCON which is
2  owned by his wife.

3  On May 13, 2005, an agreement was reached between Thomas and Phillips setting
4  forth the terms of an exclusive distributorship. The parties to the agreement were Defendant
5  Phillips on behalf of Defendants Corridor and MAPCON, and Thomas on behalf of Plaintiff.
6  The agreement granted Plaintiff exclusive rights to distribution of Korean made Skid Loaders
7  manufactured by Shinheung, Inc. (Shinheung) within a confined geographical area. Under
8  the terms of the agreement, Defendant Corridor, who possesses exclusive United States
9  distributor rights from Shinheung, would grant Plaintiff exclusive rights to distribution of the
10 specified products in the continental Unites States west of the Mississippi River. However,
11 Plaintiff would be forbidden from direct dealings with Shinheung and would be required to
12 make all purchases of the Shinheung equipment through Defendant MAPCON.

13 The affidavits submitted by the parties conflict as to some of the facts surrounding the
14 preliminary solicitation and negotiation that led to the May 13, 2005, agreeement. It is
15 uncontested that early in 2005 Defendant Phillips contacted Todd Equipment, an Arizona
16 business, regarding the potential of forming an exclusive distributor agreement. According
17 to Thomas, Todd Equipment subsequently contacted and involved him in the negotiations
18 with Defendant Phillips. It is also uncontested that on March 27, 2005, Defendant Phillips
19 traveled to Arizona and met with Todd Equipment, at which meeting Thomas was present.
20 The affidavits conflict as to the purpose and content of that visit. Plaintiff asserts that, while
21 in Arizona, Defendant Phillips, for himself and for MAPCON, sought to solicit an exclusive
22 regional distributor for Shinheung products. Plaintiff asserts that during the visit,
23 "[d]iscussions continued regarding products, territory availability as a distributor and the
24 nature of the business relationship which would exist between the distributor, Mr. Phillips,
25 MAPCON and Corridor Sales." (Affidavit of Thomas 3). Defendant Phillips asserts that
26 during his "brief" stop by Todd Equipment he was introduced to Thomas; however, he claims
27 he had no discussions with Thomas at that time about a possible distributorship relationship
28

- 2 -

1 or any other business relationship.

2 Subsequent to this meeting in Arizona, Todd Equipment determined not to pursue a
3 relationship with Defendants. Thomas, presented the opportunity, decided to pursue an
4 exclusive distributor relationship with Defendants. After further negotiations between
5 Defendants, while in Maryland, and Plaintiff, while in Arizona, Thomas executed a letter
6 agreement on behalf of Plaintiff in Arizona. Defendant Phillips on behalf of Defendants
7 MAPCON and Corridor signed the letter agreement in Maryland on May 13, 2005.

8 It appears uncontested that after the agreement (1.) Defendant Phillips engaged in no
9 further physical visits to Arizona; (2.) Defendants did not have any equipment inventoried
10 or delivered to any location within the State of Arizona; (3.) Defendants did not have any
11 discussions in the State of Arizona with any potential purchaser of any piece of equipment;
12 and (4.) Defendants did not have any discussions with any Arizona dealer or distributor[1]
13 (other than Plaintiff) regarding the equipment. However, Thomas asserts through affidavit
14 and exhibits that Defendant Phillips individually and through Corridor and MAPCON
15 exercised considerable involvement, authority, and control over Plaintiff's operations in
16 Arizona. Specifically, Plaintiff alleges that Defendant Phillips individually, and through
17 Corridor and MAPCON "dictated how business was to be conducted from Phoenix, Arizona

---

[1] Under the exclusive distributor agreement, Plaintiff had the right to create a network of distributors that would operate under the corporation. It appears uncontested that Defendants did not have had any contact with any such distributors, but did clearly continue to have a relationship with Plaintiff after May 13, 2005. Despite this interpretation by the Court, Defendant Phillips may be asserting that neither the Defendants nor their representatives had any discussions with ANY distributor, even Plaintiff, after March 13, 2005. Defendant Phillips affidavit states: "At no time after May 13, 2005, did I or any MAPCON or Corridor representatives have any discussions with any Arizona dealer or distributor regarding Shinheung manufactured equipment." (Phillips Affidavit 3). If this is the case, Plaintiff unequivocally contests the level of involvement, including substantial discussions, that Defendants had with Plaintiff. It seems reasonable to the Court that Phillip's statement was meant to exclude Plaintiff as a distributor when denying that Defendants had any discussions with any Arizona distributors regarding Shinheung manufactured equipment.

- 3 -

1 including credit applications, pricing, dealers in other states, contracts, and order sheets."
2 (Thomas Affidavit 3). Based on the Thomas Affidavit and exhibits, Plaintiff maintains that
3 (1.) Plaintiff sent orders and payments for equipment from Arizona to Defendants; (2.)
4 Based on orders and payments Plaintiff made, Defendants shipped equipment to Plaintiff's
5 distributor network customers located in some western states, excluding Arizona; (3.)
6 Defendants billed Plaintiff in Arizona; (4.) Defendants operated and controlled a website[2]
7 which was operated, in part, for the benefit of Plaintiff; (5.) Defendants controlled all
8 national advertising; (6.) Defendants controlled the form and availability of advertising
9 materials that Plaintiff was required to use, materials which represented Defendant
10 MAPCON's relationship with Plaintiff to clients; (7.) Defendants exerted control over
11 equipment pricing, equipment sales, form of legal documentation, and other procedures of
12 operation within Plaintiff's business and between Plaintiff and Defendants; and (8.)
13 Defendant Phillips attended a training meeting in Texas in which he participated in the
14 training of dealers working under Plaintiff. (Thomas Affidavit 2-5).

15    Despite a period of performance under the agreement, Plaintiff claims that Defendants
16 breached the agreement by letter on June 9, 2006. Plaintiff filed a Complaint in Maricopa
17 County Superior Court claiming breach of contract, breach of the covenant of good faith and
18 fair dealing, conversion, tortious interference with contracts, and tortious interference with
19 business relations. Defendants subsequently removed to the United States District Court
20 under 28 U.S.C. § 1332. Defendants now moves to dismiss pursuant to Rule 12(b)(2) of the
21 Federal Rules of Civil Procedure for lack of personal jurisdiction over Defendants. For the
22 reasons stated below, the Court denies Defendants' Motion to Dismiss.

---

[2]www.bulldog-usa.com currently is operated by MAPCON and is used by potential internet customers to contact distributors. Advertisement materials used by Plaintiff referred interested parties to this website. Arizona customers seeking to contact Plaintiff would be routed through Defendants' operations in Maryland. Sales leads within Plaintiff's exclusive area obtained by Defendants through the website were then forwarded by Defendants to Thomas. Plaintiff asserts that this website was under the exclusive control of Defendants.

- 4 -

## II. PERSONAL JURISDICTION LEGAL STANDARD AND DISCUSSION

### A. The Burden of Proof and Evidence Considered

#### 1. Plaintiff Bears the Burden of Proof

The plaintiff bears the burden of establishing personal jurisdiction. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). A defendant may move prior to trial to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2); *see*, *e.g.*, *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (citing Rule 12(b)(2)). When a defendant does so, "the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction'" over the defendant. *Cummings v. W. Trial Lawyers Assoc.*, 133 F. Supp. 2d 1144, 1151 (D. Ariz. 2001) (quoting *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986)). When a court determines an issue of personal jurisdiction based upon affidavits, "[the] very limitations dictate that plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." *Data Disc*, 557 F.2d at 1285. As the *Schwarzenegger* Court stated:

> In such cases, we only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction. Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true. Conflicts between parties over statements contained in the affidavits must be resolved in the plaintiff's favor.

*Schwarzenegger*, 374 F.3d at 800 (citations and internal quotations omitted). Because no statutory method for resolving the personal jurisdiction issue exists, the district court determines the method of its resolution. *See Data Disc*, 557 F.2d at 1285 (citing *Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939)). In this case, the Court rules on Defendants' Motion to Dismiss based solely on the written materials submitted by the parties.

#### 2. Evidence the Court Considered

In analyzing Defendants' Motion to Dismiss, the Court has considered the following

- 5 -

1  materials submitted by Plaintiff: (1.) the Complaint (Doc. # 4-2); (2.) the Response to
2  Defendants' Motion to Dismiss (Doc. # 13); and (3.) the affidavit of Robert Thomas with
3  accompanying exhibits (Docs # 13.1-13.8). The Court also has considered the following
4  materials submitted by Defendant: (1.) the Motion to Dismiss (Doc. # 11); (2.) Defendants'
5  Reply to Plaintiff's Response (Doc. # 14);   (3.) the affidavit of Cullen Philips with
6  accompanying exhibits (Doc. # 11-3) ; and (4.) Defendants' exhibits submitted with its Reply
7  to Plaintiff's Response (Doc. # 14.2). Because the Court is ruling on the written materials
8  submitted by the parties, the court accepts all undisputed facts as true and constues disputed
9  facts in favor of the Plaintiff.   *See Schwarzenegger*, 374 F.3d at 800.

### B.   Substantive Personal Jurisdiction

Because no applicable federal statute governing personal jurisdiction exists, Arizona's long-arm statute applies to this case. *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 559 (9th Cir. 1995) (citing *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993)). Arizona's long-arm statute provides for personal jurisdiction to the extent permitted by the Due Process Clause of the United States Constitution. Ariz. R. Civ. P. 4.2(a);[3] *see also Uberti v. Leonardo*, 181 Ariz. 565, 569, 892 P.2d 1354, 1358, *cert. denied*, 516 U.S. 906 (1995) (stating that under Rule 4.2(a), "Arizona will exert personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution").

Absent traditional bases for personal jurisdiction (i.e., physical presence, domicile, and consent), the Due Process Clause requires that a nonresident defendant have certain minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997) (citing *Int'l Shoe*, 326 U.S. at 316). The Due Process Clause protects a

---

[3]Ariz. R. Civ. P. 4.2(a) provides, in pertinent part: "A court of this state may exercise personal jurisdiction over parties, whether found within or outside the state, to the maximum extent permitted by the Constitution of this state and the Constitution of the United States."

- 6 -

1  defendant's "liberty interest in not being subject to the binding judgments of a forum with
2  which he has established no meaningful 'contacts, ties or relations.'" *Omeluk v. Langsten*
3  *Slip & Batbyggeri*, 52 F.3d 267, 269-70 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S.
4  462, 471-72 (1985)). A nonresident defendant's liberty interest is protected:

> By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign"' the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."

8  *Id.* at 270 (alteration in original) (quoting *Burger King*, 471 U.S. at 472).

9  "In determining whether a defendant had minimum contacts with the forum state such
10 that the exercise of jurisdiction over the defendant would not offend the Due Process Clause,
11 courts focus on 'the relationship among the defendant, the forum, and the litigation.'"
12 *Brink v. First Credit Resources*, 57 F. Supp. 2d 848, 860 (D. Ariz. 1999) (citing *Shaffer v.*
13 *Heitner*, 433 U.S. 186, 204 (1977)). If a court determines that a defendant's contacts with
14 the forum state are sufficient to satisfy the Due Process Clause, then the court must exercise
15 either "general" or "specific" jurisdiction over the defendant. *See Helicopteros Nacionales*
16 *de Colombia v. Hall*, 466 U.S. 408, 414-15 nn.8-9 (1984) (citations omitted); *Doe*, 112 F.3d
17 at 1050. The nature of the defendant's contacts with the forum state will determine whether
18 the court exercises general or specific jurisdiction over the defendant. *Id*.

### 1. General Jurisdiction

20 A court may assert general jurisdiction over a nonresident defendant "[i]f the
21 defendant's activities in the state are 'substantial' or 'continuous and systematic,' . . . even
22 if the cause of action is unrelated to those activities." *Doe*, 112 F.3d at 1050-51 (quoting
23 *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir.
24 1986)); *see Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995).

25 Despite Plaintiff not asserting an argument in support of general jurisdiction,
26 Defendants argue that they do not have "substantial" or "continuous and systematic" contacts
27 with Arizona. The Court agrees. Defendants do not own property or maintain an office in

- 7 -

Arizona. Although Defendants engaged in business with Plaintiff, the business did not rise to the level of "continuous and systematic." Because Defendants' activities in the forum state are not sufficiently substantial, this Court cannot assert general jurisdiction over Defendants.

### 2. Specific Jurisdiction

If a defendant does not have substantial or continuous and systematic contacts with the forum state, then the court must determine whether the defendant has had sufficient contacts with the forum state such that the exercise of specific jurisdiction over the defendant would not offend the Due Process Clause. *See Int'l Shoe*, 326 U.S. at 316; *Core-Vent*, 11 F.3d at 1485. The Ninth Circuit applies a three-prong test to determine whether the defendant's contacts with the forum state are sufficient to subject it to the state's specific jurisdiction. *Schwarzenegger*, 374 F.3d at 802. Under this three-prong test, specific jurisdiction exists only if: (a) the nonresident defendant purposefully directs activities or consummates some transaction with the plaintiff's forum, or performs some act by which he personally avails himself of the privilege of conducting activities in that forum; (b) the claim arises out of or relates to the defendant's forum-related activities; and (c) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is reasonable. *Id.*; *see*, *e.g.*, *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Cybersell, Inc. v. Cybersell, Inc.* 130 F.3d 414, 416 (9th Cir. 1997)); *see also Burger King*, 471 U.S. at 472-73.

### a. Purposeful Availment Requirement

In discussing the specific jurisdiction test, the United States Supreme Court emphasized long ago that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe*, 326 U.S. at 319). More recently, the Supreme Court held that a court may also have specific jurisdiction over a defendant where the intended effects of the defendant's non-forum conduct were purposely directed at and caused harm in the

- 8 -

forum state. *Calder v. Jones*, 465 U.S. 783, 789-90 (1984) (adopting "effects test" for libel, invasion of privacy, and intentional infliction of emotional distress claims where defendant's Florida conduct had "effects" in California, the forum state). Consistent with this precedent, the Ninth Circuit has held that a district court should apply different specific jurisdiction tests to contract and tort cases. *See Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) (stating that in determining whether court has specific jurisdiction over defendant, "[i]t is important to distinguish contract from tort actions"); *Ziegler*, 64 F.3d at 473.

In cases involving certain types of torts, the Ninth Circuit has held that courts should apply the "effects test" and that "jurisdiction may attach if an out-of-forum defendant merely engages in conduct aimed at, and having an effect in, the situs state." *Ziegler*, 64 F.3d at 473. In cases arising out of contractual relationships, including those involving related tort claims, the Ninth Circuit applies the "purposeful availment" test enunciated in *Hanson*.[4] Plaintiff's Complaint states a claim for breach of contract and related tort claims; therefore, the Court will apply the purposeful availment test in analyzing whether there is specific jurisdiction over Defendants.

In cases arising out of a contractual relationship:

> A contract alone does not automatically establish the requisite minimum contacts necessary for the exercise of personal jurisdiction. "[P]rior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" are the factors to be considered. The foreseeability of causing injury in another state is not a sufficient basis on which to exercise jurisdiction.

*Gray*, 913 F.2d at 760 (citations omitted) (quoting *Burger King*, 471 U.S. at 474, 478-79). A defendant has engaged in affirmative conduct and thereby "purposely availed himself of

---

[4]*See, e.g., Roth*, 942 F.2d at 621 (applying purposeful availment test in breach of contract action); *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (applying purposeful availment test in case where the plaintiff brought action for rescission, breach of warranty, and misrepresentation); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 817 (9th Cir. 1988) (finding effects test inapplicable and stating that, "unlike *Calder* and *Haisten*, in this case personal jurisdiction is sought on a contract claim, not on a tort claim").

- 9 -

1  the benefits of a forum if he has deliberately 'engaged in significant activities within a State
2  or has created "continuing obligations" between himself and the residents of the forum.'"
3  *Gray*, 913 F.2d at 760 (quoting *Burger King*, 471 U.S. at 475-76); *see Cybersell, Inc.*, 130
4  F.3d at 417 (stating that "the 'purposeful availment' requirement is satisfied if the defendant
5  has taken deliberate action within the forum state or if he has created continuing obligations
6  to forum residents") (citing *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)).
7  Additionally, purposeful availment is present when the defendant "[has] performed some
8  type of affirmative conduct which allows or promotes the transaction of business within the
9  forum state." *Sher,* 911 F.2d at1362 (quoting *Sinatra v. National Enquirer, Inc.*, 854 F.2d
10 1191, 1195 (9th Cir. 1988)).

11 Finally, in analyzing the purposeful availment requirement, the Ninth Circuit performs
12 a qualitative evaluation of the defendant's contact with the forum state to determine whether
13 "the 'defendant's conduct and connection with the forum State are such that he should
14 reasonably anticipate being haled into court there.'" *Core-Vent*, 11 F.3d at 1485 (quoting
15 *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

16 In the present case, Defendant Phillips, on behalf of Defendants MAPCON and
17 Corridor, actively solicited, partly while within the State of Arizona, a business relationship
18 with Plaintiff that resulted in an exclusive distributorship agreement.  Defendants thereby
19 engaged in affirmative conduct with Plaintiff in Arizona.  As described in *Gray*, in addition
20 to the agreement, the parties contemplated a future relationship.  Plaintiff and Defendants
21 entered into a business relationship to market and sell Shinheung products within the western
22 portion of the United States.  In looking at the economic reality of Defendants' activities as
23 well as the actual course of dealings between the parties, the Court concludes that Defendants
24 "deliberately engaged in significant activities" within Arizona by directing its commercial
25 efforts toward an Arizona corporation.

26 Further, in forming the business relationship, the parties positively created continuing
27 obligations to each other.  This was not a situation where unilateral obligations solely fell

- 10 -

upon Plaintiff. In fact, a multitude of continuing obligations fell upon Defendants. Defendants were obligated to operate the website, provide relevant sales lead information, conduct national advertising, provide advertising and promotional materials to Plaintiff, engage in financial transactions with Plaintiff, receive orders from Plaintiff, and effect delivery of ordered equipment purchased through Plaintiff. Additionally, the Court finds that the affirmative conduct of maintaining the website, performing national advertising, creating and distributing advertising and promotional materials, participating in training of Plaintiff's distributor network, complying with orders, and delivery of products to Plaintiff's distributor network and consumers certainly "allow[ed] or promot[ed] the transaction of business" within Arizona.

Finally, if the parties had continued to abide by the terms of the March 2005, agreement, presumably the parties would continue to engage in business transactions from their respective places of business in Arizona and Maryland. Defendants could reasonably anticipate being haled into court in Arizona once the parties formed and operated under the business relationship. Based on the foregoing record, the Court finds Defendants purposefully availed themselves of the laws of the forum state by conducting business in and intending to create a future relationship with Plaintiff in Arizona.

### b.     Claim Arises Out of Activities

The Ninth Circuit has adopted a "but for" test for determining whether a plaintiff's cause of action arises out of the defendant's forum-related activities. *Doe*, 112 F.3d at 1051; *see Omeluk*, 52 F.3d at 271. The "arising out of" requirement is met if, but for the contacts between the defendant and the forum state, the cause of action would not have arisen. *See Terracom*, 49 F.3d at 561.

The "but for" test is satisfied in this matter because the cause of action arises out of Defendants' forum-related activities and involvement. Strictly speaking, but for Defendants' solicitation of an exclusive distributor in Arizona, Plaintiff's claim for breach of contract would not have arisen. Additionally, but for Defendants' failure to continue to perform under

1 the distributor agreement (continuing obligations), Plaintiff's claim for breach of contract 2 would not have arisen. Had Defendants not solicited Plaintiff's business in the forum state, 3 or had continued to perform under the agreement, the breach of contract would not have 4 occurred. Therefore, the Court finds that the alleged breach of contract arises out of 5 Defendants' forum-related activities.

### c. Reasonableness of Jurisdiction

An unreasonable exercise of jurisdiction violates the Due Process Clause even if the "purposeful availment" and "arising out of" requirements of the specific jurisdiction test are satisfied. *See Ziegler*, 64 F.3d at 474-75*; Int'l Shoe*, 326 U.S. at 316 (holding that exercise of personal jurisdiction must "not offend traditional notions of fair play and substantial justice"). A district court presumes, however, that its exercise of jurisdiction over a defendant is reasonable if the first two requirements of the specific jurisdiction test are met. *See Ballard*, 65 F.3d at 1500 (citing *Sher*, 911 F.2d at 1364). If the first two requirements are satisfied, then the burden of proof shifts and the defendant " must 'present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477).

The Ninth Circuit considers the following seven factors in determining whether the exercise of specific jurisdiction over a defendant is reasonable: (1.) the extent of the defendant's purposeful interjection into the forum state; (2.) the burden on the Defendant of litigating in the forum; (3.) the extent of conflict with the sovereignty of the defendant's state; (4.) the forum state's interest in adjudicating the dispute; (5.) the most efficient judicial resolution of the dispute; (6.) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7.) the existence of an alternative forum. *See Ziegler*, 64 F.3d at 475 (citing *Terracom*, 49 F.3d at 561) (finding that all seven factors must be weighed, but none are dispositive); *see also Worldwide Volkswagen*, 444 U.S. at 292 (listing several of the seven factors).

Because the Court has found that the first two requirements of specific jurisdiction

- 12 -

1 have been met, Defendants must come forward with a compelling case to rebut the
2 presumption that jurisdiction in Arizona is reasonable. Defendants have failed to meet this
3 burden. In fact, the balance of the aforementioned factors favor Plaintiff. Given the Court's
4 finding that Defendants' contacts with the forum state meet the purposeful availment prong,
5 the Court also finds that Defendants purposefully interjected themselves into the forum state
6 to conduct business. Defendants have failed to show that it would be substantially burdened
7 by litigating in Arizona; Defendants argue only that Maryland would be more convenient.
8 Arizona's sovereign interests outweigh that of Maryland, as the effects of the alleged breach
9 are felt in Arizona and remedies are sought under Arizona law. The forum state has an
10 interest in adjudicating this dispute, because Plaintiff is incorporated in Arizona and has its
11 operations in Arizona. In terms of efficiency, Plaintiff's witnesses and substantial part of the
12 evidence are located in the forum state. Though an alternative forum exists in Maryland,
13 Plaintiff's preference of forum is clearly its home state. The inconvenience on Defendants
14 of litigating in an Arizona forum would be transferred to Plaintiff in the Maryland forum.
15 Based on the factors, Defendants have failed to present a compelling case that the exercise
16 of jurisdiction would not comport with fair play and substantial justice. Requiring
17 Defendants to submit to the jurisdiction of the Court would not impose substantial burdens
18 on it. Therefore, the presumption that exercising jurisdiction would be reasonable has not
19 been overcome.

20 In summary, Plaintiff has satisfied the three-prong specific jurisdiction test with
21 respect to Defendants. The Court holds that it has specific jurisdiction over Defendants.
22 Therefore, the Motion to Dismiss for lack of personal jurisdiction is denied.

23 **III.    Evidentiary Hearing**

24 Defendants further request an evidentiary hearing "should the Court [find] facts set
25 forth in the Thomas Affidavit germane to establishing personal jurisdiction." (Doc. # 14, 6).
26 While Defendants are correct that the Court does have discretion to take evidence in order
27 to resolve contested issues, Defendants have failed to properly request such a hearing. *See*
28

- 13 -

*Data Disc,* 557 F.2d at 1285-86. In essence, Defendants have asked the court to rule on the Motion to Dismiss through written materials; however, if the Court rules against the Defendants, then the Defendants would have the court suspend the ruling in lieu of an evidentiary hearing. The Court refuses to entertain such a request and summarily denies the request for an evidentiary hearing. The denial of the evidentiary hearing is done without prejudice. If, following review of this order, Defendants remain convinced that Plaintiff cannot carry its evidentiary burden of establishing personal jurisdiction by a preponderance of the evidence, then Defendants may, by motion, properly request the court to permit discovery and/or an evidentiary hearing on the matter.[5]

## IV. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that the Court denies Defendants' Motion to Dismiss Complaint for lack of personal jurisdiction (Doc.# 11);

**IT IS FURTHER ORDERED** that the Court denies without prejudice Defendants' request for an evidentiary hearing.

DATED this 30th day of March, 2007.

_____
James A. Teilborg
United States District Judge

---

[5]However, upon a request to permit discovery or an evidentiary hearing on a matter of personal jurisdiction, "the trial court is vested with broad discretion [to deny such request] and will not be reversed except upon the clearest of showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Wells Fargo & Co, v, Wells Fargo Express Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977). Nonetheless, if plaintiff avoids a motion to dismiss by making a prima facie showing, by written materials, of jurisdictional facts, then he must still prove the jurisdictional facts at trial by a preponderance of the evidence. *Id.*